*In re* HUDDELL and another, Bankrupts.[*]

[*District Court, E. D. Pennsylvania.* February 9, 1883.)*

TAXES—LANDLORD AND TENANT—MINING LEASE—LIABILITY OF PURCHASER AT SHERIFF'S SALE OF LEASEHOLD TO PAY TAXES UPON IMPROVEMENTS.

A purchaser at sheriff's sale of the unexpired term of a coal-mining lease takes the lessee's place under the lease, standing upon no higher plane in any respect, and, like the tenant, is liable for all taxes on improvements placed by himself on the land.

Exceptions to the Register's Report, allowing a set-off to the claim of P. W. Shaefer and others, executors and trustees under the will of John Gilbert, deceased.

The facts are fully set forth in the following portions of the register's report:

The claim of P. W. Shaefer and others was presented for $2,798.65, for rent of Draper Colliery, belonging to the bankrupt's estate, as follows:

| | | |
|---|---|---|
| On coal shipped from July 1, '77, to February 10, '78, | - | $20,456 38 |
| Less amount paid on same, | | 18,381 73 |
| | | $2,074 65 |
| Right of way on 3,200 tons coal, | | 160 00 |
| Taxes for 1877 on improvements above valuation of $24,000, | | 564 00 |
| | | $2,798 65 |

The colliery referred to had been purchased by certain trustees for the creditors of the bankrupts at a sheriff's sale, made under a judgment held by the

*Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

bankrupts against the Hickory Coal Company, and the business of mining carried on by the said trustees until a sale of the colliery by the assignees in bankruptcy. Pending this operation of the colliery, the lease had, on July 1, 1877, terminated. It, however, contained a provision for a renewal for a term of 15 years, "at the current rates of interest in the Mahoney valley at the time of renewal."

The claim for taxes paid was resisted on the ground that the taxes had been assessed against the owners of the land and improvements, and were properly payable by the landlords. For the same reason the assignees claimed they were entitled to set off against the claim for rent the sum of $738, taxes paid by the trustees on behalf of the estate of the bankrupts, the tenants, assessed in the same manner for the year 1876. It appears by the evidence that about the time of the lease the taxes upon the improvements were separately assessed, and continued to be so assessed for four or five years, the landlords only paying the taxes on the land; that subsequently the assessments were made against the land-owners for land and improvements; and that up to about the time of the purchase by the trustees aforesaid the matter of division of taxes was settled between the landlords and tenants upon the basis of valuation at the time of separate assessment. The lease contained no provision in regard to the matter, nor does it appear that the division of taxes referred to was the subject of any agreement which can be regarded as affecting a change in the relations and rights of the parties in this respect under the lease.

By an act of assembly of the state of Pennsylvania of April 3, 1864, it is provided that "every tenant who may or shall occupy or possess any lands or tenements shall be liable to pay all the taxes which during such occupancy or possession, may thereon become due and payable, and, having so paid such taxes or any part thereof, it shall be lawful for him, by action of debt or otherwise, to recover said taxes from his landlord, or at his election to defalcate the amount thereof out of the payment of the rent due such landlord, unless such defalcation or recovery would impair any contract or agreement between them previously made."

It is contended that the improvements are the property of the tenants, the landlord having only an option of taking them at the termination of the lease, at a valuation to be arrived at as provided therein; but they are required to be constructed by the tenants at their own expense and cost, and are of absolute necessity in mining coal, the amount of production of which determines the rental to be paid. They derive their value from their annexation to the land, and the value of the land is necessarily greatly enhanced by them. The assessor has, however, chosen to consider them and the land, for the purpose of taxation, as inseparable, and has assessed the whole tax upon the owner of the latter as the primary subject.

The wisdom or legality of this determination of the officer of the taxing power cannot be brought into question in this controversy; and, there being no contract or agreement to be impaired by the defalcation claimed, I am of the opinion that the amount of taxes paid by the trustees may be deducted from the rent, and that the claim for taxes paid by the landlord should be disallowed, and there should be awarded to P. W. Shaefer and others:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Balance of rent, | - | - | - | - | - | - | $2,074 65 |
| Charge for right of way, | - | - | - | - | - | - | 160 00 |

|  |  |
|---|---|
|  | $2,234 65 |
| Less amount of taxes paid by trustees, | $738 00 |

| | |
|---|---|
| | $1,496 65 |

To this report exceptions, *inter alia*, of P. W. Shaefer and others, executors, etc., were filed, as follows:

(1) That the register erred in reporting against exceptants, in the matter of their claims to be repaid, the amount of taxes for 1877, on improvements belonging to the bankrupts, $564.

(2) The register erred in reporting an allowance to the bankrupts of $738 for taxes on improvements belonging to the bankrupts, assessed for the year 1876, and paid voluntarily by the bankrupts.

*John G. Johnson*, for exceptions.

*Fergus G. Farquhar, contra.*

BUTLER, J. I cannot agree with the register, respecting the taxes on the tenants' "improvements." As conceded by counsel, the tenants would, clearly, be liable for these taxes were the assessment in the tenants' names. That the assessment is not so, is, in my judgment, unimportant. Under the lease, as the parties interpreted it, the liability for such taxes rested on the lessees. For some years, as the register finds, the improvements were assessed to the lessees, and the taxes paid by them. Subsequently they were assessed to the lessor with the land, but were still paid by the lessees—up to the time of the sheriff's sale. Manifestly this subsequent method of assessment was by assent of the parties, and without influence on their rights. The purchasers at the sale took the lessees' place under the lease,— standing upon no higher plane, in any respect. The lease provides against transfer, without the lessor's assent. Granting that this provision is inapplicable to a transfer by operation of law, as has been decided in this state, still the transferees take subject to the rights and equities of the original parties. It cannot be doubted that if the question were between these parties, the lessees would be liable for the taxes now in controversy. The suggestion that the transferees were ignorant of the lessees' liability for such taxes, is without force. Examination of the lease, and inquiry respecting the parties dealing under it, would have afforded this information. Where one virtually intrudes himself upon a lessor, as in the case of a purchaser at sheriff's sale of an unexpired term, under a lease stipulating against transfer, it is certainly not unreasonable to put him to such exami-

nation and inquiry, and to hold him to the equities existing between the original parties. The register's report must be corrected in accordance with the foregoing opinion.

The exceptions filed by the assignees were not pressed, and are dismissed.